**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Carol Schefers,

        Plaintiff,

v.

Hewlett Packard Enterprise,
Enterprise Services LLC,
DXC Technology,

        Defendants.

        **COMPLAINT AND JURY**
                  **DEMAND**

---

The Plaintiff, Carol Schefers, for her Complaint against Defendants, states and alleges as follows:

<u>PARTIES, JURISDICTION & VENUE</u>

1.    Plaintiff is a natural person residing in the City of St. Michael, County of Wright, State of Minnesota.

2.    Defendant Enterprise Services, LLC is now a subsidiary of Defendant DXC Technology Company.  DXC was created by the April 2017 merger of Computer Sciences Corporation and the Enterprise Services business of Defendant Hewlett Packard Enterprise ("HPE"). As of January 2017, Defendants claim employees of HPE's Enterprise Services business are now employed by Enterprise Services LLC.  Enterprise Services, LLC, DXC and HPE are hereinafter referred to as "Defendants."

3.    At all times relevant hereto, Plaintiff and Defendants were "employee" and "employer," respectively, within the meaning of Minnesota Statute § 363A.03 <u>et seq.</u>

1

4.   At all times relevant hereto, Plaintiff and Defendants were "employee" and "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and the Equal Pay Act, 29 U.S.C. §§ 203 and 206.

5.   This court has original jurisdiction to hear this Complaint and adjudicate the claims stated herein under Title VII and Equal Pay Act, pursuant to 28 U.S.C. § 1331.

6.   The unlawful employment actions complained of herein occurred in Minnesota, as Plaintiff is a teleworker from her home in Wright County.

FACTS

7.   Plaintiff immigrated to the United States in 1998.  In 2001, Plaintiff began working for the Defendants as Business Consultant I and was promoted to Business Consultant II in 2003.

8.   For the next fourteen years, Plaintiff remained at this entry level classification despite her stellar work performance as she grew in experience, skill and took on job duties and roles of a Business Consultant III by the year 2005 although she was not given the title and the benefits associated with that position. Furthermore, Defendants tasked Plaintiff with team lead role duties from 2005 to 2011. Again, Plaintiff did not acknowledge or compensate Plaintiff for her work.

9.   In and around 2005, men performing the same job duties and taking on the same responsibilities as Plaintiff were paid $95,000.00 per year or more while Plaintiff was paid no more than $52,000.00 per year between 2005 and 2010.

10.   During this timeframe, Plaintiff's male counterparts performing the same duties as her earned a minimum of $110,000.00 per year and as much as $125,000.00 per year.

11.   From 2009-2011, Plaintiff performed the duties of a Business Consultant IV.

12. Beginning in 2012, Plaintiff was performing job duties at the level of a Business Consultant IV but continued to be paid at a $60,000 level I rate.

13. Despite Plaintiff's job duties and extraordinarily high-performance levels, she watched as her male coworkers received promotion after promotion accompanied by raises for more than thirteen years.

14. Over the years of her employment, Plaintiff had multiple conversations with her managers in which she requested level upgrades and pay raises due to her skill, actual tasks performed and tasks/projects assigned to her.

15. During February 2015 and again in April 2015, Plaintiff talked with her manager, Michael Scott Smith about the fact that she was performing high level tasks and not being paid the same or more than her male counterparts. Smith told Plaintiff, "I will set up some time for us when I get back to prepare for a promotion. I believe that we may have an opportunity for this in the June time frame."

16. During May 2015, upon Plaintiff's request, Smith sent Plaintiff an excel spreadsheet that set forth the Business Consultant "Job Level Definitions." This document sets forth the specific job tasks and duties Defendants' Business Consultants were to perform at each level.

17. Plaintiff advocated on her own behalf by providing examples of the work she was performing was equal to the higher level paid employees she had trained and described tasks and projects she completed along with higher level paid employees in which she instructed them. Her pleas were ignored and Plaintiff did not receive Level upgrades or corresponding pay increases.

18. Plaintiff made a report via Defendants' "Contact HR" system on April 15, 2016 about the discriminatory pay and promotion practices. Plaintiff specifically reported that she had

been subjected to unfair pay practices for "over a decade." She reported that she had been performing at an Intermediate Business Consultant IV level, but was paid as Business Consultant II and had been passed over for promotions and her manager had long been aware. She asked to be fairly compensated.

19. Even after making the report, which was passed from Karmin Madrigal in HR to Alin Hutanu in HR, the matter was closed within four days with little to no action.

20. Plaintiff persisted in reaching out to Mr. Hutanu and finally did get him to talk with her on or about April 20, 2016.

21. In that conversation, Plaintiff explained to Mr. Hutanu that she had been taking on more duties, performing very well, was respected as a "go to" person within her work teams but, unlike her male counterparts, had not received any level upgrades or pay increases acknowledging her work.

22. Mr. Hutanu's first response was to tell Plaintiff that she was being paid at a level consistent with her job category.

23. Plaintiff explained that the problem was that she had not been promoted into a higher job category even though she had been performing the job duties of higher job levels for years.

24. In response, Mr. Hutanu told Plaintiff he would look into the matter and talk with her again.

25. When Plaintiff did not hear back from Mr. Hutanu, she wrote to him on April 29, 2016 asking him whether he had compared her compensation rate with that of her teammates. She also provided more information about the disparities in pay relating to job duties by explaining that she had been mentoring another team member that was at a job level above hers and receiving

4

more pay. Plaintiff asked Hutanu how Defendants could expect her to mentor an employee above her job level and still be paid and classified as an entry level employee.

26.    Mr. Hutanu responded to the email within forty-five minutes stating, "I had a conversation with your manager last week, on this topic. While I cannot provide details, I can tell you that your leadership team is looking into providing a promotion for you, in recognition of your efforts that are going above and beyond your role at a Business Consultant II."

27.    Over the next several months, Plaintiff had multiple phone and email conversations with her Practice Principal, Vickie Carvajal, regarding the promotion and pay raise Mr. Hutanu referenced during April 2016.

28.    Each time Plaintiff raised the issue, Ms. Carvajal responded with excuses about there being "no money for promotions in the budget."

29.    At the beginning of December 2016, Ms. Carvajal again told Plaintiff there was no money in the budget for her promotion or pay raise but she attempted to pacify her with a nominal bonus.

30.    At the end of the December 2016, Plaintiff again wrote to Ms. Carvajal to inquire about her promotion and pay increase. Ms. Carvajal did not respond.

31.    On January 9, 2017, there had still been no promotion and no job classification upgrade and Plaintiff wrote to Ms. Carvajal again about her pay raise and promotion.

32.    Plaintiff referenced to Carvajal the fact that it is unfair that her male coworkers were paid between $90,000.00 and $250,000.00 per year, even some with junior level experience, but she still had no promotion or pay increase.

33.    Plaintiff also explained that she had just worked the entire weekend working on a "Carrier upgrade."

5

34.     Plaintiff further explained that she wanted to take time off during the week as she could no longer "work like this for free anymore" and referencing the fact that her salary is so low.

35.     For years, because of her experience and skill, Plaintiff had been called upon to assist with three large accounts and worked across two teams.  No other team member worked across two teams on a regular basis. Plaintiff told Ms. Carvajal that her male coworkers regularly sought her assistance because her work is "top notch" and she had been able to perform tasks no others could perform on a regular basis.

36.     Ms. Carvajal simply responded via IM saying that she was working on it and still had some steps to take before anything could happen.

37.     Around this same time, Plaintiff learned from a coworker that he was paid approximately between $150,000.00 to $220,000.00 per year.

38.     He could not believe that Plaintiff was being paid so little, especially given the fact that she was so valuable to the teams and had the same job duties and responsibilities and he did. He advised her to report the matter and "do something about it."

39.     Plaintiff explained that she had been making reports but feared going outside the company for assistance because she feared retaliation.

40.     This man's response to her was, "Fear no one but God."

41.     Feeling empowered by the encouragement, Plaintiff emailed Ms. Carvajal with a list of her job accomplishments and work duties.

42.     By email dated January 11, 2017, Plaintiff raised issues about not having been paid in accordance with the Equal Pay Act and made a request to remedy the situation by promoting her and providing a pay increase to $180,000.00 - $200,000.00 per year.

43.     Plaintiff still got no response.

44.    On January 25, 2017, Plaintiff contacted the EEOC and reported the discrimination and violations of the Equal Pay Act.

45.    Plaintiff's Charge of Discrimination was filed and served on Defendants on February 7, 2017. Plaintiff was advised by the EEOC that Defendants were notified of her Charge filing on February 7, 2017.

46.    On February 7, 2017, Defendants offered Plaintiff an opportunity to apply for her former male coworker's position. This male coworker, J. Price, had been with the team for two years.

47.    Price told Plaintiff that he started with the company at a Level III employee earning $95,000.00. Plaintiff was offered $91,000.00 to take his position as a Business Consultant Level IV.

48.    The transition was supposed to mean that Plaintiff would work on just one team rather than being pulled back and forth across two teams. Despite that representation, Plaintiff was made to continue working across two work teams. Plaintiff continues to work many weekend and overtime hours and remains underpaid and classified in a job grade level that is well below her skill and experience level.

49.    In and around the end of January 2017, Plaintiff made a report of sexual harassment via the "Contact HR" system.

50.    Plaintiff reported that while on a business trip during December 2016 with several men from her work team, she was subjected to sexually hostile treatment by her male coworker.

51.    The co-worker repeatedly grabbed and hugged Plaintiff, tried to make her let him into her hotel room and after she refused these advances, he attempted to touch her and get into her room again.

52.     At some point between mid-February 2017 and early March 2017, Plaintiff was asked to meet with Lisa Kyser regarding the EEOC charge she filed alleging violations of the EPA and other discrimination.

53.     Ms. Kyser explained that she was an "HR/Legal Representative" and in the first meeting, she asked Plaintiff to "drop her EEOC complaint" since she had received a pay increase and Kyser communicated that she did not want the EEOC to investigate the matter.

54.     Plaintiff told Ms. Kyser that she had made the charge with the EEOC only after she repeatedly had complained through Defendants' HR systems and nothing had changed.

55.     Plaintiff asked Ms. Kyser to investigate the matter and then she would talk with her about resolving the issues of discrimination.

56.     On March 15, 2017, Ms. Kyser again summoned Plaintiff for a meeting.

57.     This time she asked Plaintiff what she wanted that would make her drop the EEOC charge.

58.     In response, Plaintiff told her she wanted to keep her job, have her salary increased to at least $125,000.00 and she wanted back pay for the years of discriminatory treatment.

59.     Plaintiff also explained that she thought she should consult an attorney.

60.     Ms. Kyser responded that she could do so but, "it would cost her."

61.     She then asked Plaintiff to provide an update within a week.

62.     Instead, Plaintiff retained counsel and counsel contacted Ms. Kyser on Plaintiff's behalf.

63.     Plaintiff did not hear anything from HR or anyone at Defendants about her sexual harassment complaint until after counsel for Plaintiff contacted Defendants by letter dated March 24, 2017.  All the while, Plaintiff continued to have to work with the harassing co-worker and he

continued to subject Plaintiff to his pattern of aggressive conduct followed by an apology and then a period of calm before the next aggressive act – and the cycle repeated.

64.    Finally, on or about March 27, 2017, Plaintiff was interviewed via telephone by Liesl Keeter, an Employee Relations Consultant for Defendants. Plaintiff was however, also subjected to several questions emailed to her and at least three phone conversations with Keeter. Plaintiff was made to defend her allegations, felt as though she had done something wrong and was made to explain why she continued to interact with the harassing co-worker after the sexual harassment incidents. Plaintiff had to interact with the co-worker as they worked on the same projects.

65.    Ultimately, HR informed Plaintiff that it did not substantiate her allegations and that since Plaintiff and Chandra worked out of different cities, the problem would not continue. `

66.    Since Plaintiff retained counsel and provided Defendants with additional facts and circumstances supporting her claims, she has been subjected to retaliation.

67.    Plaintiff has since been subjected to disciplinary action with Defendants alleging she engaged in unprofessional conduct in making reports of discrimination.

68.    In her sixteen years of employment with Defendants, Plaintiff has never been subject to discipline.

69.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of wages and benefits, and other serious damages.

70.    On or about February 7, 2017, Plaintiff timely filed a charge pursuant to the Equal Pay Act, sex/gender discrimination and national origin discrimination with the EEOC, which was cross filed with the Minnesota Department of Human Rights.

71.     On or about July 14, 2017, the EEOC issued Plaintiff a Notice of Right to Sue letter.

72.     Pursuant to Minn. Stat. § 363A.33, Subd. 1(3), Plaintiff provided the Minnesota Department of Human Right with notice of her intent to bring a civil action.  On August 2, 2017, Plaintiff faxed and mailed a copy of the Summons and Complaint in this matter to the Minnesota Department of Human Rights pursuant to Minn. Stat. § 363A.33, Subd. 3.

73.     Plaintiff has timely commenced this action and fully complied with the administrative requirements and has exhausted her administrative remedies.

## COUNT I
## VIOLATIONS OF THE EQUAL PAY ACT

74.     Plaintiff re-alleges all preceding paragraphs of this Complaint.

75.     29 U.S.C. § 206(d)(1) prohibits employers from paying different wages to employees of the opposite sex for equal work on jobs the performance of which requires "equal skill, effort, and responsibility," and which are "performed under similar working conditions."

76.     Defendants paid different and lesser wages to Plaintiff than to her male peers despite performing the same job duties and taking on the same responsibilities.

77.     Defendants' conduct was willful under 29 U.S.C. § 255.

78.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, and loss of wages and benefits (back pay and front pay), and other serious damages as well as an additional amount owed her as a penalty.

10

## COUNT II
## GENDER/SEX DISCRIMINATION
## IN VIOLATION OF
## THE MINNESOTA HUMAN RIGHTS ACT

79.     Plaintiff re-alleges all preceding paragraphs of this Complaint

80.     The Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A.08, Subd. 2, and Title VII make it unlawful for an employer to discharge or otherwise discriminate against any person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment because of sex.

81.     Defendants discriminated against Plaintiff in terms of wages, benefits and promotions by paying different wages to employees of opposite sexes for equal work on jobs requiring equal skills, effort and responsibility.

82.     Defendants presents no legitimate reason for this unequal treatment and its stated motivation is pretext for discrimination.

83.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits, and other serious damages.

## COUNT III
## GENDER/SEX DISCRIMINATION
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

84.     Plaintiff realleges each and every paragraph of this Complaint.

85.     Defendants by and through its managers and officials acting on behalf of Defendants, and within the scope of their employment engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

These practices include, but are not limited to compensation, terms, upgrading, promotions, conditions, facilities or privileges of employment because of sex.

86.    Defendants failed to take all reasonable steps to prevent discrimination based upon Plaintiff's sex from occurring.

87.    The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting her status as an employee because of her sex.

88.    The unlawful employment practices complained of above were intentional and were performed by Defendants with malice and/or reckless disregard to the anti-discrimination laws that protect Plaintiff.

89.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits, and other serious damages.

## COUNT IV
### SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT

90.    Plaintiff re-alleges all preceding paragraphs of this Complaint.

91.    Defendants, by and through its employees, managers, and officials acting on the Defendants' behalf, and within the scope of their employment, engaged in unlawful employment practices involving Plaintiff in violation of the Minnesota Human Rights Act, Minn. Stat. § 363.01 *et seq*. These practices include, but are not limited to, creating a hostile work environment on the basis of sex and sexually harassing Plaintiff.

92.    At all relevant times, the Defendants' harassing conduct toward Plaintiff was based on sex.

12

93.    Defendants' harassing conduct toward Plaintiff altered the terms and conditions of Plaintiff's employment, substantially interfered with Plaintiff's employment, and created an intimidating, hostile, and offensive working environment for Plaintiff.

94.    Defendants' harassing conduct had the purpose and effect of substantially interfering with Plaintiff's employment, and such conduct constitutes sexual harassment as defined and prohibited by Minn. Stat. § 363A.01 *et seq.*

95.    Defendants had actual or constructive knowledge of the sexual harassment and hostile work environment in which Plaintiff worked but failed to take appropriate action to remedy or prevent the sexual harassment and other unlawful conduct from occurring.

96.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of wages and benefits, and other serious damages.

<u>COUNT V</u>
**REPRISAL IN VIOLATION OF
THE MINNESOTA HUMAN RIGHTS ACT**

97.    Plaintiff re-alleges all preceding paragraphs of this Complaint.

98.    Defendants, by and through its managers and officials acting on the Defendants' behalf, and within the scope of their employment, engaged in unlawful employment practices involving Plaintiff in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et seq.* These practices include, but are not limited to, engaging in retaliatory conduct because of Plaintiff's good faith opposition to Defendants' sexually discriminatory employment practices.

99.    The unlawful employment practices complained of above deprived Plaintiff of equal employment opportunities and otherwise adversely affected her status as an employee because of her protected conduct.

100.   Defendants performed the unlawful employment practices complained of above intentionally and with malice or reckless indifference to the anti-retaliation laws that protect Plaintiff.

101.   As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of wages and benefits, and other serious damages.

## PRAYER FOR RELIEF

Therefore, Plaintiff requests that judgment be entered against Defendants for the following:

a.   Declaring that Defendants' acts or omissions described in this Complaint constitute violations of applicable federal and state laws which protect Plaintiff;

b.   Enjoining Defendants and its employees, officers, directors, agents, successors, assignees, affiliates, merged or acquired predecessors, parent or controlling entities, subsidiaries and all other persons acting in concert or participation with it, from its unlawful acts;

c.   That Defendants be required to make Plaintiff whole for its adverse, retaliatory, and discriminatory actions with compensatory damages and with interest of an appropriate inflation factor;

d.   That Plaintiff be awarded her attorneys' fees, costs, and disbursements pursuant to statute;

e.   That the Court grant other and further relief as it deems fair and equitable.

f.    That Plaintiff be reinstated her job or, in the alternative, be awarded front pay and monetary value of any employment benefits she would have been entitled as an employee for Defendants;

14

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS

Dated: August 3, 2017

_Joni M. Thome_
Joni M. Thome
Bar No. 232087
Frances E. Baillon
Bar No. 028435X
*Attorneys for Plaintiff*
BAILLON THOME JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: (612) 252-3570
Fax: (612) 252-3571
jmthome@baillonthome.com
fbaillon@baillonthome.com